# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DIVISION OF NORTH CAROLINA
## CHARLOTTE DIVISION

PROVIDENCE REAL ESTATE VENTURE, LLC,   :
:
:
    Plaintiff,                              :
:
vs.                                            :   Civil Action No.
:
GREAT CIRCLE CAPITAL, LLC, GCH2, LLC,   :   <u>3:16-CV-200</u>
CHRISTOPHER NEEDHAM,  KEYSTONE, LLC,   :
GEORGE W. COURLAS, JAMES M. THORBURN,   :   **JURY**
THE ORENDORF FAMILY TRUST, GEORGE E   :   **DEMANDED**
SANSOUCY TRUST, CRAYNE PROPERTIES, LLC,   :
and RICHARD EDEN,                          :
:
    Defendants.                             :
_____   :

## <u>COMPLAINT</u>

NOW COMES Plaintiff PROVIDENCE REAL ESTATE VENTURE, LLC

(hereafter "Providence") and files this Complaint against Defendants GREAT

CIRCLE CAPITAL, LLC (hereafter "Great Circle"), GCH2, LLC (hereafter

"GCH2"), CHRISTOPHER NEEDHAM (hereafter "Needham"), KEYSTONE,

LLC (hereafter "Keystone"), GEORGE W. COURLAS (hereafter "Courlas"),

JAMES THORBURN (hereafter "Thorburn"), THE ORENDORF FAMILY

TRUST (hereafter "OF TRUST"),   GEORGE E. SANSOUCY TRUST (hererafter

"GS Trust"), CRAYNE PROPERTIES, LLC (hereafter "Crayne Properties") and

A BEB01 3142949 v1
3259065-000000 04/28/2016

RICHARD EDEN (hereafter "Eden") (collectively "Defendants") showing the Court as follows:

## PARTIES

### 1.

Providence is a Florida limited liability company with its principal place of business in Orlando, Florida. *A true and accurate copy of Providence's 2016 Annual Report filed with the Florida Secretary of State is attached hereto as Exhibit A.* Providence is owned and managed by Guardian Real Estate Ventures, Inc. ("Guardian"), a Florida corporation. Marlon Brand is the president of Guardian and is authorized to execute all documents on its behalf. *A true and accurate copy of Guardian's 2016 Annual Report filed with the Florida Secretary of State is attached hereto as Exhibit B.* Providence entered into a sales contract with Defendant Great Circle for the purchase of four limited liability companies owning four separate apartment complexes in Charlotte, North Carolina.

### 2.

Defendant Great Circle is a North Carolina limited liability company with its principal place of business located in Indian Trail, North Carolina. Defendant Great Circle may be served with process via its registered agent, Defendant Needham, at 3008 Rosewater Lane, Indian Trail, North Carolina 28079. At the time of the underlying transaction, Great Circle alleged it was the 100% owner and

2

manager of four separate limited liability companies owning four separate apartment complexes in Charlotte, North Carolina that were the subject of the sales contract with Providence.

3.

Defendant GCH2 is a North Carolina limited liability company with its principal place of business located in Charlotte, North Carolina. Defendant GCH2 may be served with process via its registered agent, Catherina A Barnes, at 1001 Elizabeth Avenue, Suite 1B, Charlotte, North Carolina 28204. At the time of the underlying transaction, GCH2 alleged it owned 72.45% of Defendant Great Circle, was the managing member of Defendant Great Circle and that its own manager was Defendant Needham.

4.

Defendant Needham is an individual resident of the State of North Carolina who may be served with process at 5511 Carmel Road, Charlotte, North Carolina 28226 or wherever he may be located. At the time of the underlying transaction, Needham alleged he was the manager and 31.24715% owner of Defendant GCH2.

5.

Defendant Keystone is a Nebraska limited liability company conducting business in North Carolina. Defendant Keystone may be served with process via its registered agent, Defendant Thorburn, at 11506 Nicholas Street, Suite 200,

3

Omaha, Nebraska 68154. Defendant Keystone is subject to the jurisdiction and venue of this Court as its representatives travel to and conduct business in North Carolina. At the time of the underlying transaction, Defendant Keystone represented it was a 12.39% owner in Defendant Great Circle.

6.

Defendant Courlas is an individual resident of the United Virgin Islands who may be served with process at 15609 Upper Carolina, St. John, United Virgin Islands 00830 or wherever he may be located. Defendant Courlas is subject to the venue and jurisdiction of this Court as he regularly travels to and conducts business in North Carolina. At the time of the underlying transaction, Courlas alleged he owned 31.24715% of Defendant GCH2 and 8.65% of Defendant Great Circle.

7.

Defendant Thorburn is an individual resident of Nebraska who may be served with process at 11506 Nicholas Street, Suite 200, Omaha, Nebraska 68154 or wherever he may be located. Defendant Thorburn is subject to the venue and jurisdiction of this Court as he regularly travels and conducts business in North Carolina. At the time of the underlying transaction, Thorburn alleged he was the manager of Defendant Keystone, which had a 12.39% ownership interest in Defendant Great Circle.

4

8.

Defendant OF Trust is a trust entity organized and existing under the laws of Pennsylvania. Defendant OF Trust may be served with process via its trustee, Robert Orendorf, at 104 Woodridge Drive, Harrisburg, Pennsylvania 17110. Defendant OF Trust is subject to the venue and jurisdiction of this Court as its representatives regularly travel to and conduct business in North Carolina. At the time of the underlying transaction, Defendant OF Trust maintained an unspecified ownership percentage in Defendant GCH2.

9.

Defendant GE Trust is a trust entity organized and existing under the laws of New Hampshire. Defendant GE Trust may be served with process via its trustee, George Sansoucy, at 89 Reed Road, Lancaster, New Hampshire 03584. Defendant GE Trust is subject to the venue and jurisdiction of this Court as its representatives regularly travel to and conduct business in North Carolina. At the time of the underlying transaction, Defendant GE Trust maintained a 6.5259% ownership interest in Defendant GCH2.

10.

Defendant Crayne Properties is a North Carolina limited liability company with its principal place of business located in Charlotte, North Carolina. Crayne Properties may be served with process via its registered agent, Wayne Tobola, at

5

7201 Benita Drive, Charlotte, North Carolina 28212. At the time of the underlying transaction, Crayne Properties alleged it was a 16.7376% owner in Defendant GCH2.

11.

Defendant Eden is an individual resident of New Jersey who may be served with process at 180 Bayberry Lane, Watchung, New Jersey 07069 or wherever he may be located. Defendant Eden is subject to the venue and jurisdiction of this Court as he regularly travels and conducts business in North Carolina. At the time of the underlying transaction, Defendant Eden alleged he was a 14.3465% owner in Defendant GCH2.

**<u>JURISDICTION AND VENUE</u>**

12.

This Court has personal jurisdiction over all Defendants as they reside, conduct business or maintain minimum contacts with the State of North Carolina.

13.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the Plaintiff and all Defendants and the amount in controversy exceeds $75,000.

6

14.

This Court has venue over this matter pursuant to 28 U.S.C. § 1391 as at least one of the Defendants resides and/or conducts business in Charlotte, North Carolina.

## FACTUAL BACKGROUND

15.

Providence entered into a Purchase and Sale Agreement dated December 15, 2012 (hereafter "PSA") with Defendant Great Circle and Defendant Needham. *A true and accurate copy of the PSA is attached hereto as Exhibit C.* In the preamble to the PSA, Providence was identified as the "purchaser," Great Circle was identified as the "seller" and Needham was identified as the "indemnitor."

16.

Defendant Great Circle represented in the PSA that it was the 100% owner of the following four North Carolina limited liability companies: (1) GCC-CHASE, LLC ("GCC Chase"), (2) GCC-SHARON RIDGE, LLC ("GCC Sharon Ridge"), (3) GCC-LANDINGS, LLC ("GCC Landings") and (4) GCC-COURTYARD, LLC ("GCC Courtyard") (collectively referred to herein as Great Circle's "Membership Interests").

7

17.

Defendant Great Circle further represented in Exhibit C to the PSA that GCC Chase was the sole owner of a 132-unit apartment complex located at 2728 Commonwealth Avenue, Charlotte, North Carolina 28205 known as Chase Apartments/Vista Commons; that GCC Sharon Ridge was the sole owner of a 75-unit apartment complex located at 1937 Sharon Road West, Charlotte, North Carolina 28210 known as Sharon Ridge Apartments; that GCC Landings was the sole owner of a 125-unit apartment complex located at 711 Farmhurst Drive, Charlotte, North Carolina 28217 known as Landings Apartments; and that GCC Courtyard was the sole owner of a 54-unit apartment complex located at 5312 Montague Street, Charlotte, North Carolina 28205 known as Courtyard Apartments (collectively "GCC Properties" or "GCC Entities") .

18.

The GCC Properties were encumbered by four separate loans with Arbor Commercial Funding, LLC from 2011, which were subsequently assigned and transferred to Fannie Mae (hereafter "Fannie Mae Loans").  *True and accurate copies of the Fannie Mae Loans to GCC Chase ($4,739,000), GCC Landings ($3,700,000), GCC Sharon Ridge ($3,000,000) and GCC Courtyard ($2,405,000) are attached hereto as Exhibit D.*  Each of the four Fannie Mae Loans contained a

8

Section 11.02(b)(2)(A) which prohibited the direct or indirect transfer of a controlling interest in the GCC Entities without prior approval from Fannie Mae.

19.

As set forth in the PSA, Providence agreed to purchase and Great Circle agreed to sell seventy-five percent (75%) of Great Circle's Membership Interests in the GCC Entities free and clear of encumbrance of every kind, character and description for a total purchase price of two million two hundred thousand dollars ($2,200,000) payable in installments as set forth in the PSA.

20.

As set forth in section 2.2 of the PSA, Providence provided Great Circle with an initial deposit of two hundred thousand dollars ($200,000) via wire transfer on November 14, 2012. *A true and accurate copy of a Guardian bank ledger showing the $200,000 wire to Great Circle is attached hereto as Exhibit E.*

21.

In accordance with the PSA, the closing took place on December 21, 2012 at which time Providence made an additional payment of nine hundred thousand dollars ($900,000) to Great Circle. *A true and accurate copy of a Guardian trust account ledger showing payment of $900,000 to Great Circle is attached hereto as Exhibit F.*

A BEB01 3142949 v1
3259065-000000 04/28/2016

22.

In contradiction to the PSA, however, Great Circle delivered to Providence at the closing an Assignment of Membership Interest and Release Agreement transferring 75% ownership in Great Circle to Providence instead of 75% ownership in GCC Chase, GCC Sharon Ridge, GCC Landings, and GCC Courtyard as required by the PSA. *A true and accurate copy of the Assignment of Membership Interest and Release Agreement is attached hereto as Exhibit G.* When pressed about this change, Defendant Needham assured Providence it was a distinction without a difference as Great Circle owned 100% of the GCC Entities.

23.

Accompanying the 75% membership assignment from Great Circle to Providence was a resignation and waiver form whereby GCH2 resigned its position as "manager" of Great Circle allegedly clearing the way for Providence to take full control of all operations. *A true and accurate copy of the resignation and release is attached hereto as Exhibit H*.

24.

In furtherance of its scheme, Defendant Needham provided Providence with a series of membership assignment redemption agreements attempting to document and demonstrate the transfer of membership interests to and from Great Circle as follows:

10

1. GCH2 redeems 31.24715% of its ownership from Defendant Courlas for unspecified amount;

2. GCH2 redeems unspecified ownership percentage from OF Trust for $100,000;

4. GCH2 redeems 16.7376% of its ownership from Defendant Crayne Properties for $230,000;

5. GCH2 redeems 14.3465% of its ownership from Defendant Eden for $200,000;

6. GCH2 redeems 6.5259% of its ownership from Defendant GE Trust for $130,000;

7. GCH2 redeems 31.24715% of its ownership from Defendant Needham for unspecified price;

8. Great Circle redeems 72.45% of its ownership from GCH2 for unspecified price;

9. Great Circle redeems 8.65% of its ownership from Defendant Courlas for unspecified price;

10. Great Circle redeems 12.39% of its ownership from Defendant Keystone for $214,683.

*True and accurate copies of the Membership Redemption Agreements are attached hereto as Exhibit I.*

11

25.

In conformance with the rights granted in the PSA and with the full knowledge, consent and participation of Defendants, Providence assumed full control and management of the GCC Properties beginning in January 2013. Providence's control and management of the GCC Properties included the following activities:

    a.    leasing and marketing efforts;

    b.    maintenance, rehabilitation and construction, including cleaning, painting, decorating, plumbing, carpentry, grounds care and such other maintenance and repair work as necessary;

    c.    utilities and other services such as water, electricity, gas, fuel, oil, sewage and trash disposal, vermin extermination, laundry facilities, telephone services and other services as necessary;

    d.    bookkeeping and financial services including opening vendor and utility accounts, opening bank accounts, and collecting rent;

    e.    payment of debts including vendors, liens, and the Fannie Mae Loans;

    f.    expenditure of capital improvements.

26.

All told, Providence spent over $650,000 of its own money in the maintenance, care and capital improvements for the GCC Properties.

12

27.

After Providence assumed control over the GCC Properties, Providence uncovered a series of problems and misrepresentations concerning the transaction as formalized in an email from Defendant Courlas on September 27, 2013:

1.   Defendant Thorburn as manager of Defendant Keystone allegedly rescinded Keystone's redemption agreement with Great Circle.

2.   Defendants Courlas, Needham, and GCH2 threatened to rescind their redemption agreements with Great Circle unless Providence negotiated and paid additional amounts for each agreement.

3.   Fannie Mae had not agreed to the management transfer of the GCC Properties.

4.   Defendants demanded additional money under alleged "reconciliations" for prepaid rent, security deposits, open aged accounts payable and repairs.

*A true and accurate copy of the September 27, 2013 email from Defendant Courlas is attached hereto as Exhibit J.*

28.

Shortly thereafter, Defendants sent a follow up email on October 6, 2013 setting an arbitrary new purchase price of $3,284,814, arguing that the GCC Entities had not been purchased as part of the PSA, and discussing a new "closing"

13

A BEB01 3142949 v1
3259065-000000 04/28/2016

and "purchase agreement" completely ignoring the transaction that was completed on December 21, 2012. *A true and accurate copy of the October 6, 2013 email is attached hereto as Exhibit K.* On October 8, 2013, Defendants sent an additional email arguing that GCC Courtyard was not part of the PSA requesting an additional $1,085,000 for its inclusion in the deal. *A true and accurate copy of the October 8, 2013 email from Defendant Courlas is attached hereto as Exhibit L.* Providence responded on October 12, 2013 that no more money would be paid under the PSA until the redemption issues were resolved. *A true and accurate copy of the October 12, 2013 email from Providence is attached hereto as Exhibit M.*

29.

Thereafter, Providence continued its management and control of the GCC Entities and Properties with the full knowledge, consent and participation of Defendants. On January 13, 2014 and February 6, 2014, counsel for Defendants sent letters to Providence with new lists of demands claiming the deal can only be "resurrected" upon payment of additional funds to Defendants, payment of all GCC Property vendors and assumption of all Fannie Mae liabilities without the necessary change of control approvals. *True and accurate copies of the January 13, 2014 and February 6, 2014 letters are attached hereto as Exhibit N.* When Providence tendered payment of the remaining $1,100,000 under the PSA despite

14

the Fannie Mae and redemption issues being unresolved, the payment was rejected by Defendants and they reiterated their demands from the January 13 and February 6 letters attached as Exhibit N.

30.

Inexplicably and without notice or default as required by section 2.6 of the PSA, in September 2014, Defendants Needham, Courlas and Thorburn enlisted local law enforcement officials to physically remove Providence representatives from the GCC Properties claiming Providence had no ownership in the GCC Entities. In an attempt to validate their actions, Defendants conducted a clandestine meeting and passed a resolution on behalf of Great Circle attempting to position Defendant Courlas and Needham as new managers of Great Circle in charge of the GCC Entities. *A true and accurate copy of the alleged Great Circle resolution is attached hereto as Exhibit O.*

31.

Defendants refused to provide any information regarding ownership or control of the GCC Entities, refused to acknowledge Providence owned 75% of Great Circle, refused to refund any of the $1,100,000 paid by Providence for ownership of the GCC Entities, and refused to refund any monies expended by Providence in improving the GCC Properties.

15

32.

Thereafter, Defendants managed the GCC Entities to the exclusion of Providence, collected rents and took over bank accounts, changed locks and pass codes, converted any and all profits, and trespassed on the GCC Properties.

33.

Without consent or approval from Providence, Defendants negotiated and executed a series of Forbearance Agreements with Fannie Mae dated August 5, 2015. *True and accurate copies of the Fannie Mae Forbearance Agreements are attached hereto as Exhibit P.* The Forbearance Agreements were signed by Defendant GCH2 as manager of Great Circle and Defendant Needham as manager of GCH2.

34.

Shortly thereafter, Defendants without any consent or approval from Providence, filed Chapter 11 Bankruptcy protection In The United States Bankruptcy Court for the Western District of North Carolina for each of the GCC Entities claiming that Defendants, and not Providence, were the rightful owners and managers of the GCC Entities. *True and accurate copies of the Bankruptcy Filings for the GCC Entities filed on December 1, 2015 are attached hereto as Exhibit Q.*

16

35.

In the Disclosure Statements and Plans of Reorganization filed with the Bankruptcy Court on March 30, 2016 and signed by Defendant Courlas, Defendants made the following contentions and proposals:

1.  The PSA with Providence had been "aborted" and Great Circle, through the various Defendant individuals and entities, retained control over the GCC Entities.

2.  Providence was classified as a Class 8: Equity Interest holder of GCC Chase and GCC Courtyard and was offered repayment of an undetermined equity interest payable in five annual installments by the reorganized debtor's net after tax cash flow on or before June 30 of years 2023-2027.

3.  Defendants proposed to liquidate the properties owned by GCC Sharon and GCC Landings paying off the secured creditor, Fannie Mae, with the proceeds leaving nothing for Providence.

4.  Defendants Courlas and Thorburn proposed creating a new entity and contributing $50,000 to GCC Chase in return for 100% of the equity interests therein.

17

5.      Defendants Courlas and Thorburn proposed creating a new entity and contributing $30,000 to GCC Courtyard in return for 100% of the equity interests therein.

*True and accurate copies of the Disclosure Statements and Plans of Reorganization of the GCC Entities are attached hereto as Exhibit R.*

36.

As constituted, Defendants bankruptcy plans position them as follows:

1.      Convert the $1,100,000 invested by Providence into Great Circle and distributed out to Defendants as part of the redemption scheme allocated in paragraph 24 without reimbursement or repayment to Providence.

2.      Utilize Providence's management of all four of the GCC Properties from January 2013 through September 2014 without reimbursement or repayment to Providence.

3.      Convert Providence's $650,000 of capital contributions into the GCC Properties without reimbursement or repayment to Providence.

4.      Eliminate any distributions to Providence upon the liquidation of the apartment complexes owned by GCC Landings and GCC Sharon Ridge.

18

5.     Obtain sole control and ownership (through a newly created entity) of the apartment complex owned by GCC Chase with a stated equity value of $2,700,000 in excess of the debt to Fannie Mae.

6.     Obtain sole control and ownership (through a newly created entity) of the apartment complex owned by GCC Courtyard with a stated equity value of $800,000 in excess of the debt to Fannie Mae.

## COUNT I

## DECLARATORY JUDGMENT

### (Against All Defendants)

37.

Providence incorporates by reference, as if fully set forth herein, the averments contained in paragraphs 1 - 36 of this Complaint.

38.

Providence has an actual and justiciable dispute with Defendants concerning ownership and control of Great Circle by and through the PSA.

39.

Great Circle is the 100% owner and manager of the GCC Entities recently placed into Chapter 11 bankruptcy protection and establishing ownership of Great Circle will settle the controversy surrounding authority to control, direct and negotiate the bankruptcy action on behalf of the GCC Entities.

19

A BEB01 3142949 v1
3259065-000000 04/28/2016

40.

Providence seeks a declaration from this Court concerning the enforceability, performance and legal rights of the parties under the PSA.

## COUNT II

## BREACH OF CONTRACT

## (Against Great Circle and Needham)

41.

Providence incorporates by reference, as if fully set forth herein, the averments contained in paragraphs 1 - 40 of this Complaint.

42.

Providence entered into the PSA with Defendants Great Circle and Needham on or about December 15, 2012.

43.

Providence performed its obligations under the PSA by depositing the earnest money in section 2.2; making the first payment under section 2.3(a) and assuming control and management over the GCC Properties.

44.

Thereafter, Defendants Great Circle and Needham breached the PSA by failing to transfer 75% of the Membership Interests in each of the GCC Entities as set forth in section 2.5(a)(i) of the PSA; failing to secure uncontested redemption

20

agreements of certain owners of Great Circle in violation of sections 2.5(a)(vi) and 5.9 of the PSA; failing to obtain approval from Fannie Mae for the ownership transfer in violation of sections 2.5(a)(v), 3.2(b)(ii) and 4.3(b)(ii) of the PSA; forcibly removing Providence from the GCC Properties without notice or default as required by section 2.6 of the PSA; and failing to indemnify Providence from all losses associated with this transaction as required by section 7.1 of the PSA.

45.

Providence has been damaged by Defendant Great Circle's and Needham's breach of the PSA in an amount to be determined at trial.

## COUNT III

## QUANTUM MERUIT/UNJUST ENRICHMENT

### (Against All Defendants)

46.

Providence incorporates by reference, as if fully set forth herein, the averments contained in paragraphs 1 - 45 of this Complaint.

47.

Providence conferred a benefit on Defendants by transferring $1,100,000 to Great Circle under the PSA, by investing an additional $650,000 in the GCC Properties for capital improvements and by managing the GCC Properties from January 2013 through September 2014.

21

48.

Defendants consciously accepted the benefits from Providence by distributing the $1,100,000 paid under the PSA amongst themselves and by seizing control and ownership of the GCC Properties after they were improved by Providence through capital contributions and management.

49.

Providence has been damaged by Defendants' conduct in an amount to be determined at trial.

## COUNT IV

## TRESPASS

## (Against Defendants Great Circle, GCH2, Needham, Courlas and Thorburn)

50.

Providence incorporates by reference, as if fully set forth herein, the averments contained in paragraphs 1 - 49 of this Complaint.

51.

Providence obtained legal authority, ownership and possession of the GCC Properties by virtue of the PSA.

A BEB01 3142949 v1
3259065-000000 04/28/2016

52.

Defendants Great Circle, GCH2, Needham, Courlas and Thorburn had direct knowledge, consent and participation in the legal rights transferred to Providence through the PSA.

53.

In September 2014, Defendants Great Circle, GCH2, Needham, Courlas and Thorburn intentionally entered the GCC Properties and ejected Providence from the premises without authorization or authority.

54.

Providence has been damaged by the trespass of Defendants Great Circle, GCH2, Needham, Courlas and Thorburn in an amount to be proven at trial.

## COUNT V

### CONVERSION

**(Against all Defendants)**

55.

Providence incorporates by reference, as if fully set forth herein, the averments contained in paragraphs 1 - 54 of this Complaint.

56.

Defendants have illegally and unlawfully exercised dominion and control over Providence's $1,100,000 investment in Great Circle under the PSA, over

23

Providence's $650,000 investment in capital improvements to the GCC Properties, and over the rents, accounts and profits from management of the GCC Properties from September 2014 through the present.

57.

Despite repeated demands, Defendants have failed to return Providence's property and cease the aforementioned actions.

58.

Providence has been damaged by Defendants' unlawful conversion in an amount to be determined at trial.

**COUNT VI**

**FRAUD**

**(Against Defendants Great Circle, GCH2, Needham and Courlas)**

59.

Providence incorporates by reference, as if fully set forth herein, the averments contained in paragraphs 1 - 58 of this Complaint.

60.

Defendants Great Circle, GCH2, Needham and Courlas made material and misleading statements to Providence concerning their intent and ability to complete the PSA and finalize the transfer of 75% ownership in the GCC Entities.

24

61.

Specifically, Defendants Great Circle, GCH2, Needham and Courlas represented to Providence that (1) the transfer of ownership to Great Circle instead of to the individual GCC Entities as required by the PSA was a distinction without a difference that would not impact Providence's rights to control the GCC Properties; (2) the Membership Redemption Agreements were valid, binding, agreed upon and lawfully obtained by all members of Great Circle and GCH2; and (3) Fannie Mae had approved the change of ownership contemplated by the PSA and would issue consents immediately after closing not jeopardizing the status of the Fannie Mae loans.

62.

Defendants Great Circle, GCH2, Needham and Courlas knew these representations were false at the time they were communicated, made the representations with scienter and with the intent of deceiving Providence into investing $1,100,000 under the PSA, making capital improvements to the GCC Properties and managing the GCC Properties for 18 months with no compensation.

63.

Defendants Great Circle, GCH2, Needham and Courlas completed the fraud by physically removing Providence from the GCC Properties, refusing to recognize the ownership transferred to Providence under the PSA, converting Providence's

25

initial and capital investments for their own use, and eliminating Providence's ownership rights under the Chapter 11 bankruptcy plans.

64.

Providence reasonably relied on the representations and promises made by Defendants Great Circle, GCH2, Needham and Courlas in connection with their intent to complete the transaction described in the PSA.

65.

Providence is entitled to actual, compensatory and punitive damages against Defendants Great Circle, GCH2, Needham and Courlas in amount to be determined at trial.

**WHEREFORE**, Providence prays:

(a)     That a jury be empaneled

(b)     That the Court enter judgment against Defendants on each Count of this Complaint;

(c)     That the Court enter an order declaring the PSA in full force and effect with Providence recognized as the 75% owner of Great Circle;

(d)     That the Court award actual and compensatory damages for Defendant Great Circle's and Needham's breach of contract;

(e)     That the Court award damages in favor of Providence under its claim against Defendants for Unjust Enrichment/Quantum Meruit;

26

(f)     That the Court award actual and compensatory damages against Defendants Great Circle, GCH2, Needham, Courlas and Thorburn for their intentional trespass of Providence's property;

(g)     That the Court award actual and compensatory damages for Defendants' unlawful conversion of Providence's property;

(h)     That the Court award actual, compensatory and punitive damages for the fraud perpetrated by Defendants Great Circle, GCH2, Needham and Courlas against Providence;

(i)     That the Court award Providence its actual attorneys' fees and costs; and

(j)     That the Court award Providence such other and further relief as is just and proper.

Respectfully submitted this 28th day of April, 2016.

s/ R. Andrew Hutchinson
R. Andrew Hutchinson, N.C. Bar# 46764
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
100 Med Tech Parkway, Suite 200
Johnson City, Tennessee  37604
Phone:  (423) 928-0181
Fax:  (423) 928-5694
dhutchinson@bakerdonelson.com

A BEB01 3142949 v1
3259065-000000 04/28/2016